RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1131-MR

JAMISON BURNS                                                          APPELLANT

v.
APPEAL FROM MEADE CIRCUIT COURT
HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 14-CI-00393

ELIZABETH BURNS                                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND LAMBERT, JUDGES.

THOMPSON, CHIEF JUDGE: Jamison Burns appeals from a July 14, 2023 order

of the Meade Circuit Court confirming the Domestic Relations Commissioner's

report, and from an August 23, 2023 order denying Burns' motion for Kentucky

Rules of Civil Procedure ("CR") 59.05 relief. He argues that the circuit court

abused its discretion in adopting the Domestic Relations Commissioner's report,

and that the Domestic Relations Commissioner should have recused herself from

the proceedings. After careful review, we find no error and affirm the orders on appeal.

## FACTS AND PROCEDURAL HISTORY

Jamison Burns ("Appellant") and Elizabeth Burns ("Appellee") were married in 2012. During the marriage, Appellee gave birth to one child, with Appellant adopting another child. In 2014, Appellee filed a petition for dissolution of marriage in Meade Circuit Court.

Dissolution was granted on April 29, 2015, with all remaining issues reserved for later adjudication. Pursuant to local rules, a hearing on the remaining issues was conducted before the Domestic Relations Commissioner ("DRC"). The DRC recommended that the circuit court award Appellant the parties' residence. The DRC also recommended that the parties be granted joint custody of the children, with Appellant designated as primary residential custodian and Appellee granted alternate weekends plus one overnight visit per week. The circuit court adopted the DRC's recommendations.

In the years that followed, the parties' custodial arrangement was often contentious. Appellant would later allege that Appellee had unstable living arrangements; lived in too many places; moved from job to job too often; had too many boyfriends; and, failed to exercise her custodial rights. Appellee maintained that Appellant refused to allow her to see the children one overnight per week;

denied her right to see the children on school breaks; made it difficult for Appellee to exercise summer visitation; and, generally interfered or failed to facilitate the exercise of her custodial rights. At one point, Appellee unsuccessfully sought a restraining order against Appellant.

In early 2023, Appellee filed a motion for modification of parenting time or, in the alternative, for the circuit court to order Appellant to comply with the existing custodial arrangement.

A hearing on the motion was conducted before the DRC on March 16, 2023. The parties testified, as did Appellant's wife, Kayla. The older child, then 14 years old ("Child 1") also testified, as did the younger child, aged 10 ("Child 2"). In considering the motion, the DRC cited Kentucky Revised Statutes ("KRS") 403.320, which provides that modification of visitation, if any, must be based on the best interests of the children. Additionally, the DRC noted the factors set out in KRS 403.270 for determining the best interests of the children.

The DRC went on the make recommended findings of fact based on the testimony and the record. It found that the children testified that they preferred living with Appellee because it was calmer and there was less fighting than at Appellant's house. The children testified that Appellant and Kayla argued and fought. Child 1 said that his mother listens to him and respects him. Child 2 testified that Appellant told him that he was the cause of the arguments between

Appellant and Kayla, and that this made him feel sad. Additional testimony was adduced, such as Child 1 stating that he had to physically protect Child 2 from Appellant. Child 1 stated that he can talk to Appellee but not Appellant, and that Appellant has punished him when he asks to go live with his mother.

The DRC made additional findings based on KRS 403.270, such as the wishes of each parent to be primary custodian (KRS 403.270(2)(a)); the desire of the children to live with Appellee (KRS 403.270(2)(b)); the relationship between the children and each of their parents (KRS 403.270(2)(c)); and, each parent's motivation to be primary custodian (KRS 403.270(2)(d)). In addition, the DRC considered the children's adjustment to each home (KRS 403.270(2)(e)), recommending a finding that the children have lived most of their lives with Appellant, but that Appellee has lived in the same location since 2021 and could provide a stable home. The DRC found no evidence that either party had physical or mental health issues affecting parenting, (KRS 403.270(2)(f)), though it found that Child 1 had depression along with a myriad of other mental health disorders. The DRC also found that Child 2 had ADHD. The DRC noted that both children had mental health issues which needed to be addressed by the parties. The DRC also determined that domestic violence was not a factor in this case, (KRS 403.270(2)(g)), and that, although Appellant believes he has properly co-parented

with Appellee, the evidence indicated that he has made it difficult for Appellee to exercise her parenting time.

Based on the foregoing, on May 22, 2023, the DRC rendered a report recommending that the parties continue with a joint custodial arrangement, with Appellee designated as the children's primary residential custodian. The parties were given a detailed visitation schedule, with Appellant having the children every other weekend. The schedule included the parenting time for holidays and school breaks. Appellant filed objections to the report.

On July 14, 2023, and based on its finding that the report was supported by credible evidence and applicable precedent, the Meade Circuit Court entered an order confirming and adopting in its entirety the DRC's report. Appellant then moved, pursuant to CR 59.05, to vacate the July 14, 2023 order. The motion was denied, and this appeal followed.

## STANDARD OF REVIEW

An appellate court will only reverse a trial court's determinations as to visitation if they constitute a manifest abuse of discretion or were clearly erroneous in light of the facts and circumstances of the case. Whether the proper law was applied to the facts is reviewed *de novo*. The test is not whether we would have decided the issue differently, but whether the findings of the trial court were clearly erroneous or an abuse of discretion. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

-5-

*Hudson v. Cole*, 463 S.W.3d 346, 350 (Ky. App. 2015) (internal quotation marks and citations omitted).

## ARGUMENTS AND ANALYSIS

Appellant argues that the Meade Circuit Court committed reversible error in adopting the DRC's report and modifying visitation. He argues that while the DRC properly relied on KRS 403.320 to consider Appellee's motion for modification of visitation, the DRC improperly utilized the factors set out in KRS 403.270 for determining the children's best interest. In support of this argument, Appellant directs our attention to *Layman v. Bohanon*, 599 S.W.3d 423 (Ky. 2020), which he maintains expressly found that the best interest provisions of KRS 403.270 are not applicable to modification of timesharing/visitation proceedings. Appellant also contends that while the DRC undertook the wrong analysis, she also failed to consider why Appellant had the children the majority of the time in the first place. Appellant then recounts the reasons he believes Appellee is not a good mother, including his claim that she left one of the children in the care of her new husband who had a criminal record; that Appellee was arrested for shoplifting while she had the children with her; and, that she lost custody of a child born before the parties married. The focus of Appellant's argument is that the DRC employed the wrong standard in making her recommendations to the circuit court,

-6-

and that the facts do not support a finding that a modification of visitation is in the children's best interests.

Appellant has not complied with Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4),[1] which requires,

> [a]n **argument** conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

(Emphasis in original.)

While Appellant's argument section does contain a preservation statement, the statement does not reveal whether this first issue was preserved for review, and if so, in what manner.[2]  "A brief may be stricken for failure to substantially comply with the requirements of these rules."  RAP 31(H)(1).  The rule requiring an argument section including a statement of preservation is a substantial requirement of RAP 32 encompassed by RAP 31(H)(1).

When a party fails to abide by the Rules of Appellate Procedure, we may choose "(1) to ignore the deficiency and proceed with the review; (2) to strike

---

[1] Formerly CR 76.12(4)(c)(v).

[2] The preservation statement notes that Appellant's second claim of error, *i.e.*, that the DRC should have recused herself, was not preserved but does constitute palpable error.

the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted); *see also Ford v. Commonwealth*, 628 S.W.3d 147, 153-55 (Ky. 2021). We choose to ignore the deficiency and proceed with the review.

KRS 403.320(3) governs the modification of visitation and states:

> The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

The question for our consideration is whether the DRC employed the correct standard for evaluating the best interests of the children. KRS 403.320(3) does not expressly state how best interests are to be determined. The child custody statute, KRS 403.270, does set out factors which may be considered in determining a child's best interest.

After closely examining the record and the law, we find no error in the DRC's application of the KRS 403.270(2) factors to Appellee's motion for a change of visitation. The factors set out in KRS 403.270(2) are a statutory guideline enacted by the General Assembly for determining a child's best interest, which we believe are equally applicable to a modification of visitation proceeding as they are to establishing or changing a custodial arrangement. These factors are not all-inclusive ("[t]he court shall consider all relevant factors *including . . .* ").

*Id.* (emphasis added).  Rather, they are a starting point for the court's determination of what constitutes the child's best interest.

In examining Appellee's motion for a change of visitation, the DRC expressly acknowledged and applied the "all relevant factors" language of KRS 403.270(2).  We ask, rhetorically, if the DRC improperly utilized the KRS 403.270(2) factors, which factors should it instead have considered?  Appellant does not answer this question, instead directing us to the reasons he believes Appellee is a poor mother and should not be the primary residential custodian nor have additional visitation.

Appellant directs our attention to *Layman*, *supra*, for the proposition that the DRC erred in applying the KRS 403.270(2) factors to the instant analysis. *Layman* held in relevant part that the Boyd Family Court properly applied the statutory scheme for modifying visitation.  We do not read *Layman* as holding that the KRS 403.270(2) factors may not be considered on a motion for modification of visitation.

Again, "[t]he test is not whether we would have decided the issue differently, but whether the findings of the trial court were clearly erroneous or an abuse of discretion."  *Hudson*, 463 S.W.3d at 350 (citation omitted).  The DRC properly considered all relevant factors in concluding that the children's best interests were served by spending more time with Appellee and less with

Appellant. This conclusion is supported by the record and, therefore, is not arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

Appellant also notes that the DRC, Heather Paynter, briefly represented him early in the dissolution proceeding prior to Appellant's retaining other counsel.[3] Based on this fact, Appellant argues that Ms. Paynter should have recused herself from making a recommendation to the circuit court on Appellee's motion to modify visitation. While acknowledging that this issue was not raised below and is not ripe for appellate review, Appellant argues that Ms. Paynter continuing in the role of DRC in this case was so violative of Kentucky's Code of Judicial Conduct and KRS 26A.015 that the matter must be reversed for new proceedings.

Appellant acknowledges that he was afforded ample opportunity to request Ms. Paynter's recusal below and chose not to do so on the advice of counsel. Having chosen not to seek her recusal, he now argues that Ms. Paynter's failure to recuse herself *sua sponte* is so egregious as to require reversal. In support of this argument, he directs our attention to KRS 26A.015(2) for the proposition that a justice, judge, or master commissioner must recuse himself if he previously served as a lawyer in the matter in controversy.

---

[3] Appellee states that Ms. Paynter represented Appellant for about 3 months, and that pleadings filed by Ms. Paynter were signed on her behalf by another attorney.

-10-

We do not find Appellant's argument persuasive. Ms. Paynter's role as DRC in the matter before us was not adjudicatory, but rather was limited to preparing "a report of recommendations to the court[.]" *See* CR 53.05(1). The Meade Circuit Court, not Ms. Paynter, rendered the orders from which Appellant now appeals. Assuming, *arguendo*, that Ms. Paynter's failure to recuse herself constitutes palpable error, such error may be waived. *Johnson v. Commonwealth*, 180 S.W.3d 494, 503 (Ky. App. 2005).

Appellant chose not to seek Ms. Paynter's recusal, then, after receiving an adverse ruling from the circuit court based on Ms. Paynter's recommendations, argues that her failure to recuse herself thwarted the ends of justice requiring a reversal and remand of the underlying order. Appellant is effectively seeking two bites at the apple – first after foregoing the opportunity to seek Ms. Paynter's recusal, and second by now arguing that her failure to do what he never sought constitutes reversible error. We are not persuaded by this argument, and cannot conclude that the Code of Judicial Conduct nor KRS 26A.015 provides relief under the facts before us.

## CONCLUSION

The DRC's recommendations to the Meade Circuit Court are amply supported by the record, and are therefore not arbitrary, unreasonable, unfair, nor unsupported by sound legal principles. Appellant waived his opportunity to seek

Ms. Paynter's recusal, and has not demonstrated that her failure to recuse herself constitutes a basis for reversing the orders of the Meade Circuit Court. For these reasons, we find no error and affirm the orders of the Meade Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Allison Spencer Russell
Louisville, Kentucky

BRIEF FOR APPELLEE:

Lyn Taylor Long
Elizabethtown, Kentucky